# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **RADIO NETWORKS, LLC,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BAISDEN ENTERPRISES, INC., and** | § | |
| **MICHAEL BAISDEN,** | § | Civil Action No. 3:14-cv-1860-L |
| | § | |
| **Defendants/Counter-Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CUMULUS MEDIA, INC.,** | § | |
| | § | |
| **Counter-Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are: Defendants/Counter-Plaintiffs Baisden Enterprises, Inc. and Michael Baisden's Motion for Summary Judgment (Doc. 121), filed November 18, 2016; Plaintiff/Counter-Defendant Radio Networks, LLC and Counter-Plaintiff Cumulus Media, Inc.'s Motion for Partial Summary Judgment (Doc. 168), filed November 18, 2016; Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of C.D. Shamburger, Jr. (Doc. 125), filed November 18, 2016; and Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of Spencer Brown, Esq. Relating to Audits (Doc. 128), filed November 18, 2016. Having considered the motions, responses, replies, record, evidence, and applicable law, the court **denies** Defendants/Counter-Plaintiffs Baisden Enterprises, Inc. and Michael Baisden's Motion for Summary Judgment (Doc. 121); **grants in part and denies in part** Plaintiff/Counter-Defendant Radio

Networks, LLC and Counter-Plaintiff Cumulus Media, Inc.'s Motion for Partial Summary Judgment (Doc. 168); **denies as moot** Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of C.D. Shamburger, Jr. (Doc. 125); and **denies as moot** Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of Spencer Brown, Esq. Relating to Audits (Doc. 128).

## I.      Background Facts

Radio Networks, LLC ("Radio Networks") provides radio programming for various radio stations in the United States.  Radio Networks is a subsidiary of Cumulus Media, Inc. ("Cumulus").  Michael Baisden ("Baisden") is a radio personality and from 2008 to 2013 was the talent for a radio talk program produced by Baisden Enterprises, Inc. ("BEI"), known as *The Michael Baisden Show*.  Baisden is the sole owner and member of BEI.  In 2008, BEI and Radio Networks entered into an agreement for the production and delivery of *The Michael Baisden Show*.  This lawsuit arises from a contractual dispute between the parties over whether Radio Networks overpaid BEI and Baisden $1,000,000 during the final fifteen-month period of their agreement.

On May 21, 2014, Radio Networks filed this action to recover the alleged $1,000,000 overpayment.  On January 20, 2016, Radio Networks filed its First Amended Complaint (Doc. 86), now the operative pleading in this case, suing BEI and Baisden for: (1) breach of contract (Count One); (2) restitution and money had and received (Count Two); and (3) fraudulent transfer under the Texas Business and Commerce Code § 24.005 (Count Three).  Radio Networks seeks judgment in the amount of $1,000,000, exemplary damages, pre- and postjudgment interest, costs, and attorney's fees.  Disagreeing about the deal's specifics, and the amount of money to which they were entitled during the final fifteen-month period of their agreement, BEI and Baisden responded by joining

Cumulus as a Counter-Defendant,[1] offering a number of affirmative defenses, and asserting counterclaims against Radio Networks and Cumulus for: (1) breach of contract for refusing to match offers BEI received from a competing radio network in or around March 2013 (Count One); (2) breach of contract for not allowing BEI to complete an audit of the revenues and expenses relating to the distribution of the Program (Count Two); (3) breach of contract for failing to use commercially reasonable efforts to obtain distribution of the Program (Count Three); (4) breach of contract for failing to engage in good-faith negotiations for a potential extension of the Agreement (Count Four); and (5) tortious interference with prospective business relationships (Count Five). Defs.' Sec. Am. Ans., Joinder, and Countercl. (Doc. 87). BEI and Baisden seek actual and compensatory damages, lost profits, pre- and postjudgment interest, costs, and attorney's fees. In addition, BEI and Baisden seek a declaratory judgment that a noncompete covenant in the parties' agreement is unenforceable.

Following discovery, the parties filed motions for summary judgment that present overlapping facts, legal issues, and arguments. Radio Networks and Cumulus (sometimes collectively, "Plaintiffs") move for partial summary judgment on their claim against BEI and Baisden (sometimes collectively, "Defendants") for restitution and money had and received (Count Two), and also move for summary judgment on all BEI and Baisden's counterclaims.[2] BEI and Baisden move for summary judgment on all of Plaintiffs' claims, as well as on their own affirmative defenses of statute of limitations, statute of frauds, the parol evidence rule, ratification and/or waiver, and

---

[1] As Baisden Enterprises, Inc. and Michael Baisden, the original defendants, brought Cumulus Media, Inc. into this action, the correct designation for Cumulus Media, Inc. is "Third-Party Defendant," not "Counter-Defendant." As the parties have used the appellation "Counter-Defendant," the court will also use it for the sake of consistency.

[2] The court, like the parties, at times refers to Radio Networks and Cumulus collectively as "Plaintiffs." The court, however, is aware that Radio Networks is the Plaintiff and that Cumulus was named as party by BEI and Baisden in their Counterclaim, and is, therefore, a third-party defendant. Nevertheless, Radio Networks and Cumulus move for partial summary judgment and respond to BEI and Baisden's summary judgment motion collectively.

excuse due to prior breach. BEI and Baisden also seek summary judgment on their request for attorney's fees and costs for having to defend against Plaintiffs' breach of contract claim. BEI and Baisden have filed objections to certain evidence upon which Plaintiffs rely to support their Motion for Partial Summary Judgment and to oppose Defendants' Motion for Summary Judgment.[3] Both summary judgment motions have been fully briefed and are ripe for determination, as are Defendants' objections. The court now sets forth the evidence, viewed in the light most favorable to the nonmoving party, and draws all reasonable inferences in the nonmoving party's favor. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).[4]

On November 12, 2008, BEI and Radio Networks entered into an agreement for the production and delivery of radio programs (the "Programs") featuring Baisden (the "Agreement"). In connection with the Agreement, Baisden signed a personal guarantee (the "Guarantee"), agreeing to "be personally bound by all . . . provisions [of the Agreement] . . . and personally guaranteed the obligations of [BEI]" under the Agreement. Baisden Guarantee (Pls.' Summ. J. App. 28) (Doc.

---

[3] *See* Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 138) (objecting to evidence submitted in support of Radio Networks and Cumulus's Motion for Partial Summary Judgment); Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 154) (objecting to evidence submitted in support of Radio Networks and Cumulus's Response to BEI and Baisden's Motion for Summary Judgment). The court will consider these objections, as needed, in the footnotes of this opinion and order.

[4] The court's recitation of the facts is taken from the uncontested evidence contained in the summary judgment record provided by the parties, or evidence to which the court has overruled a party's objection. Contested facts are noted. The court only cites to the record when it is directly quoting from it.

130).[5] The Agreement was amended by the parties three times: May 4, 2010; July 9, 2010 (the "July 2010 Amendment"); and March 9, 2011.

Among other things, under the Agreement, Radio Networks agreed to pay BEI a specific "Guaranteed Amount" (as defined in the Agreement) for each year of the term of the Agreement, subject to certain limitations. Specifically, under Paragraph 3(b) of the July 2010 Amendment, BEI was to receive:

> [T]he greater of Five Million Dollars ($5,000,000) for each of the first three contract years (or cycles) and Seven Million Two Hundred Fifty Thousand Dollars ($7,250,000), for the fourth cycle of fifteen months (the "Guaranteed Amount") or (i) forty percent (40%) of "Net Program Income" in the first contact year or (ii) fifty percent (50%) of Net Program Income in the second and third contract years and the fourth cycle of fifteen months.

July 2010 Amendment ¶ 3(b) (Pls.' Summ. J. App. 42). Thus, for the final fifteen-month period of the Agreement, from January 2012 to March 2013 (the "Final Contract Period"), Radio Networks agreed to compensate BEI in an amount equal to the greater of (1) a specific guaranteed amount of $7,250,000 ("Guaranteed Amount") or (2) fifty percent of "Net Program Income" for the Final Contract Period (as defined by the Agreement). *Id.* The first $1,000,000 of the $7,250,000

---

[5] Defendants have filed numerous boilerplate objections to the Declaration of Michael Malone. These include objecting on the basis that he lacks "personal knowledge," as well as on the bases of: "hearsay"; "calls for a legal conclusion"; "misrepresents who is to be compensated"; "invades the province of the jury"; and "improper and untimely attempt to offer expert testimony." *See generally* Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 138). The court **overrules** these objections. First, as Plaintiffs point out, Defendants fail to provide an explanation for the basis of each objection or explain how each objection applies to any actual issue or argument. It is not incumbent upon the court to connect each objection to an issue or argument and determine its relevance to the case. More importantly, the court **overrules** the objection, as it concludes Michael Malone has personal knowledge and the records attached to his Declaration fall under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Michael Malone states that his Declaration is either based on his personal knowledge or on the business records of Radio Networks. *See* Malone Decl. ¶ 2. Malone is the Vice President of Finance for Radio Networks' parent company. Federal Rule of Evidence 602 is satisfied based on Malone's Declaration. *See, e.g., ABS Ins., Ltd. v. Nat'l Union Fire Ins. Co.*, 51 F. Supp. 2d 762, 771 (E.D. Tex. 1999) (finding witness declaration that he has "personal knowledge of the facts set forth below" sufficient to do away with a litany of objections, including "hearsay, lack of personal knowledge, speculation and lack of authentication/lack of foundation."). Further, the records to which he testifies are kept in the ordinary course of business for an organization are admissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Malone both authenticated and attaches the records upon which he relies.

Guaranteed Amount was to be paid to BEI as an advance within two business days of the July 2010 Amendment, with the remaining $6,250,000 to be paid in fifteen monthly installments from January 2012 through March 2013. *Id.*

The Agreement also required Radio Networks to provide a statement each quarter setting forth the Net Program Revenue and Program Expenses for the preceding six-month period. Defendants' share of Net Program Income, if any, was to be paid to them at the time that Radio Networks provided these statements. Any statement to which Defendants did not raise an accounting objection in writing within twelve months was deemed "incontestable" under the Agreement. Agreement ¶ 3(e) (Pls.' Summ. J. App. 18).

The Agreement gave Defendants the "right to audit [Radio Networks'] books and records relating to the distribution of the [Michael Baisden] Programs" once during each twelve-month period of the Agreement. *Id.* Any "such audit [was] to be conducted during normal business hours at [Radio Networks'] offices upon not less than 30 days' prior written notice." *Id.* Only one audit was permitted for each twelve-month period, and the scope of any audit that Defendants chose to perform was limited to that preceding twelve-month period that was "not yet incontestable." *Id.* The Agreement required Defendants to provide their auditor's report to Radio Networks. *Id.*

Pursuant to the Agreement, Radio Networks paid Baisden and BEI the $1,000,000 advance for the Final Contract Period in July 2010. Radio Networks began paying the remaining amounts owed when the Final Contract Period commenced in January 2012, and paid Defendants the full $7,250,000 over the remainder of the Final Contract Period, rather than only the remaining $6,250,000 of the Guaranteed Amount.

On March 1, 2013, Radio Networks requested that Defendants return the overpayment. BEI did not deny that there was an overpayment, but it requested an audit for the Final Contract Period pursuant to paragraph 3(e) of the Agreement. Pursuant to the Agreement, Defendants were permitted to conduct an audit of Radio Networks' financial records relating to the distribution of the Program in June 2013. The parties agreed that the audit was to occur at Radio Networks' offices on June 12 and 13, 2013. In advance of the audit, BEI asked Radio Networks to make certain documents available that BEI wanted to review in connection with the audit. Radio Networks provided all the documentation related to distribution of the Programs that BEI requested, as well as the majority of the other documents requested. BEI conducted the audit at Radio Networks' offices in Dallas on June 12-13, 2013.

Following the two-day audit, Defendants' auditor, Brian Kaefer ("Kaefer") prepared a report of his findings, which was not at the time provided to Plaintiffs. In his report, which he read into the record at his deposition, Kaefer stated: "While there are some deficiencies in the supporting documentation of revenue and payroll expenses, there were no material inconsistencies between the final talent statement and the general ledger that were observed." Kaefer Dep. Tr. 78:17-21 (Pls.' Summ. J. App. 395).[6] On August 8, 2013, BEI provided a different report than Kaefer's that listed several "follow-up questions" and requested additional documentation that was not requested for the

---

[6] As was the case with their objections to Malone's Declaration, Defendants have filed numerous boilerplate objections to the deposition testimony of Kaefer, including objections such as "leading question"; "calls for hearsay" "assumes facts in its use of the word audit"; and "vague and overly broad." *See generally* Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 138). The court **overrules** these objections. First, as Plaintiffs correctly note, Defendants fail to provide an explanation for the basis of each objection or explain how each objection applies to any actual issue or argument. It is not incumbent upon the court to connect each objection to an issue or argument and determine its relevance to the case. In addition, Kaefer is an agent of Defendants who was hired to assist with the audit, and was individually represented by Defendants' counsel at his deposition. To the extent Defendants are objecting to Kaefer's reading of his own report into the record at his deposition, this objection is **overruled**, since such testimony is admissible as a statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D).

audit and posed several questions. Radio Networks responded to some of Defendants' additional inquiries and demanded on several occasions that Defendants return the $1,000,000.

Following the conclusion of the audit and Radio Networks' demands to return the overpayment, BEI made the following transfers to Baisden: $500,000 on July 12, 2013; $100,000 on July 15, 2013; and $20,000 on August 8, 2013. Defs.' Resp. to Second Interrogs. No. 3 (Pls.' Resp. App. 613-614) (Doc. 136-1). After Radio Networks filed this lawsuit, BEI made additional transfers to Baisden, as follows: $20,000 on December 1, 2015; $20,000 on December 17, 2015; and $40,000 on February 5, 2016. *Id.*

## II. Applicable Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Analysis

### A.    Radio Networks and Cumulus's Motion for Partial Summary Judgment

Radio Networks and Cumulus seek summary judgment on their claim for restitution and money had and received (Count Two).  In addition, Radio Networks and Cumulus move for summary judgment on all of BEI and Baisden's counterclaims.[7]

#### 1.    *Motion for Summary Judgment on Count Two (Money Had and Received)*

Radio Networks and Cumulus argue they are entitled to summary judgment on their claim for money had and received, which they plead in the alternative to their breach of contract claim. In support, they contend that "the undisputed facts show that Baisden and BEI received a $1 million overpayment for the Final Contract Period, which they had no legal right to retain.  Equitable principles plainly require the return of the mistaken overpayment." Pls.' Partial Summ. J. Br. 17 (Doc. 124).  In response, Defendants argue that this case involves a convoluted set of accounting issues, leading to a factual dispute as to, among other things, whether they were entitled to be paid more than the Guaranteed Amount, pro rata, in any of the fifteen payments they received during the Final Contract Period.

"A claim for 'money had and received' is equitable in nature." *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (citation omitted). "Money had and received is a category of general assumpsit to restore money where equity and good

---

[7] Radio Networks and Cumulus have not moved for summary judgment on their claims for breach of contract (Count One), fraudulent transfer (Count Three), or request for attorney's fees (Count Four).

conscience require refund." *Id.* (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.)).  "An action for money had and received arises when the defendant obtains money which in equity and good conscience belongs to the plaintiff." *Amoco Production Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).  To recover on a claim for money had and received, no showing of wrongdoing is required.  *Id.*  Instead, a claim for money had and received "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another."  *Plains Exploration*, 473 S.W.3d at 302 n.4 (citation omitted).  Because a claim for money had and received is based on equitable principles, its central purpose is "to prevent unconscionable loss to the payor and unjust enrichment to the payee." *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied).  Thus, to prevail on a claim for money had and received, a plaintiff is only required to "show that a defendant holds money which in equity and good conscience belongs to him." *Plains Exploration*,  473 S.W.3d at 302 n.4 (quoting *MGA Ins.*, 358 S.W.3d at 814).  Further, "[a]n action for money had and received may be founded upon an express agreement or one implied in fact, but it is not dependent on either." *City of Harker Heights v. San Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ); *see also Hewlett-Packard Co. v. Benchmark Electronics, Inc.*, 142 S.W.3d 554, 565 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (internal citations omitted) ("[T]he right to recovery under a count of money had and received exists independent of the parties' agreements.  Nevertheless [it] may arise out of—or be founded on—the agreement.").

Viewing all evidence in the light most favorable to BEI and Baisden, as the nonmoving parties, the court determines that BEI and Baisden have raised a genuine dispute of material fact as to whether they hold money which, in equity and good conscience, belongs to Plaintiffs.

As previously stated, under Paragraph 3(b) of the July 2010 Amendment to the Agreement, BEI was to receive,

> [T]he greater of Five Million Dollars ($5,000,000) for each of the first three contract years (or cycles) and Seven Million Two Hundred Fifty Thousand Dollars ($7,250,000), for the fourth cycle of fifteen months (the "Guaranteed Amount") or (I) forty percent (40%) of "Net Program Income" in the first contact year or (ii) fifty percent (50%) of Net Program Income in the second and third contract years and the fourth cycle of fifteen months.

July 2010 Amendment § 3(b) (Pls.' Summ. J. App. 42).  Under the Agreement and the July 2010 Amendment, the Guaranteed Amounts were paid to BEI "in equal monthly installments commencing January 1, 2009."  Any share of "Net Program Income" was to be paid quarterly.  Agreement ¶ 3(e) (Pls.' Summ. J. App. 18).  The summary judgment evidence before the court is inconclusive with respect to whether, based on Plaintiffs' complex accounting system and numerous errors and misallocations, the Net Program Income during any quarter in the Final Contract Period may have been greater than the Guaranteed Amount for that time frame, thereby affecting Defendants' overall compensation for the Final Contract Period.  While it appears doubtful to the court based on the evidentiary record before it that more than the Guaranteed Amount was owed to BEI and Baisden, the court cannot rule out this possibility on a motion for summary judgment.  Whether Defendants were owed more during any particular quarter of the Final Contract Period is an issue of fact to be resolved by a jury.

In sum, the disputed material facts surrounding the amount and timing of payments preclude summary judgment in Plaintiffs' favor on their money had and received claim.  Accordingly, the

court will deny Radio Networks and Cumulus's Motion for Partial Summary Judgment on their claim for money had and received claim (Count Two).[8]

### 2. Motion for Summary Judgment on BEI and Baisden's Counterclaims

The court now turns to Plaintiffs' Motion for Partial Summary Judgment with respect to BEI and Baisden's counterclaims for: (1) breach of contract for refusing to match offers BEI received from a competing radio network in or around March 2013 (hereinafter, the "Obligation to Match Counterclaim") (Count One); (2) breach of contract for not allowing BEI to complete an audit of the revenues and expenses relating to the distribution of the Program (hereinafter, the "Accounting Counterclaim") (Count Two); (3) breach of contract for failing to use commercially reasonable efforts to obtain distribution of the Program (hereinafter, the "Satellite Radio Counterclaim") (Count Three); (4) breach of contract for failing to engage in good-faith negotiations for a potential extension of the Agreement (hereinafter, the "Good-Faith Negotiations Counterclaim") (Count Four); and (5) tortious interference with prospective business relationships (Count Five), as well as their request for summary judgment on their declaratory judgment claim seeking a declaration that a noncompete covenant in the Agreement is unenforceable. *See* Defs.' Sec. Am. Ans., Joinder, and Countercl. (Doc. 87).

The court first addresses Defendants' contractual counterclaims. Under Texas law, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

---

[8] In light of the court's ruling denying summary judgment in Plaintiffs' favor on their claim for money had and received (Count Two), and given that the court did not rely on the testimony of C.D. Shamburger, Jr. or Spencer Brown, Esq. in its determination, the court will **deny as moot** Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of C.D. Shamburger, Jr. (Doc. 125); and Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of Spencer Brown, Esq. Relating to Audits (Doc. 128).

and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "In construing a written contract, [the] primary objective is to ascertain the parties' true intentions as expressed in the language they chose." *Plains Exploration*, 473 S.W.3d at 305. Thus, a contract must be interpreted as a whole "to give meaning to all of its terms," so that none is rendered meaningless, superfluous, or contradictory. *In re Isbell Records, Inc.*, 586 F.3d 334, 337 (5th Cir. 2009); *accord Plains Exploration*, 473 S.W.3d at 305; *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014).

If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 394 (citation omitted). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (citation omitted). A contract is not ambiguous simply because the parties advance different interpretations. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "[I]f the contract [, however,] is subject to two or more reasonable interpretations after applying the pertinent construction principles, the contract is ambiguous, creating a fact issue regarding the parties' intent." *Plains Exploration*, 473 S.W.3d at 305 (citation omitted).

Finally, a court should avoid when possible "a construction [that] is unreasonable, inequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *see*

*also Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (stating that when interpreting a contract, a court should avoid, if possible, "a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result.").

a.      *Obligation to Match Counterclaim (Count One)*

In Count One of their Counterclaim, BEI and Baisden contend that Cumulus and Radio Networks breached the Agreement by declining to match a third-party offer for Baisden's services and by preventing Defendants from accepting the offer. *See* Countercl. ¶ 26. Cumulus and Radio Networks argue they are entitled to summary judgment on Defendants' Obligation to Match Counterclaim because they were under no obligation to match any third-party offer to Defendants. The court agrees.

The unambiguous language of the Agreement gives Plaintiffs the right of first refusal for Baisden's services during the "Exclusive Negotiations Period" and the twelve-month period following the expiration of the Agreement. *See* Agreement ¶ 2(e) (Pls.' Summ. J. App. 15-16). Paragraph 2(e) of the Agreement requires Defendants to provide notice of any third-party offer to Plaintiffs and gives Plaintiffs the right to match any such offer within fourteen days. *Id.* Further, the summary judgment evidence establishes that Defendants confirmed that they understood that Plaintiffs had only a non-obligatory option to match. In their notice of the third-party offer, Defendants state: "Section 2(e) affords Cumulus an opportunity to match the foregoing offer within fourteen (14) days. Please let [us] know prior to such date whether Cumulus wishes to accept the

offer and enter into an agreement with Baisden on these terms." Notice of Third-Party Offer (Pls.'

Summ. J. App. 526).[9]

In sum, with regard to BEI and Baisden's Obligation to Match Counterclaim, the court

determines that this claim fails as a matter of law because the Agreement provided Plaintiffs the

*option* to match third-party offers, and not an obligation to do so. Further, Defendants have failed

to produce summary judgment evidence sufficient to create a genuine dispute of material fact that

Plaintiffs had an obligation to match third-party offers under the Agreement. Accordingly, because

Defendants have failed to raise a genuine dispute of material fact that Plaintiffs breached the

Agreement in this manner, Plaintiffs are entitled to judgment as a matter of law. The court will grant

Plaintiffs' motion for summary judgment on this counterclaim and enter judgment in Plaintiffs'

favor.

### b.    *Accounting Counterclaim (Count Two)*

In Count II of their Counterclaim, Defendants contend that Radio Networks and Cumulus

breached the Agreement by: (1) failing to "use reasonable efforts consistent with normal commercial

practices to market and distribute the Baisden show"; and (2) "refus[ing] to allow Baisden and BEI

access to sufficient records to complete [an] audit and determine if revenues and expenses were

properly determined." Countercl. ¶ 34.

Cumulus and Radio Networks argue they are entitled to summary judgment on Defendants'

Accounting Counterclaim because they were under no obligation to use "reasonable commercial

---

[9] The court rejects Defendants' contention that subsequent communications altered the terms of the Agreement with respect to Plaintiffs' option to match a third-party offer. *See* Countercl. ¶¶ 13, 15, 26. Defendants have provided the court with no evidence to support this allegation that the parties modified the right-to-match option, or in any way made matching obligatory.

efforts" to increase or sustain the shows revenues, and because the undisputed evidence shows that Defendants conducted their contractually permitted audit. Again, the court agrees.

Specifically, Defendants have identified no requirement in the Agreement that obligated Plaintiffs to use "reasonable commercial efforts" to sustain the show's revenue. As correctly argued by Plaintiffs, the Agreement provides that Plaintiffs have no such duty, stating: "Nothing herein shall be construed to require [Radio Networks] to utilize [Baisden's] services and, in the event we determine not to distribute the Programs, we shall have completely fulfilled our obligations hereunder by payment to you of the Guaranteed Fee as provided in subparagraph 3(b) herein." Agreement ¶ 15(a) (Pls.' Summ. J. App. 25).

With respect to an audit, as previously stated, the Agreement gave Defendants the "right to audit [Radio Networks'] books and records relating to the distribution of the [Michael Baisden] Programs" once during each twelve-month period of the Agreement. *Id.* ¶ 3(e) (Pls.' Summ. J. App. 18). Any "such audit [was] to be conducted during normal business hours at [Radio Networks'] offices upon not less than 30 days' prior written notice." *Id.* Only one audit was permitted for each twelve-month period, and the scope of any audit that Defendants chose to perform was limited to that preceding twelve-month period that was "not yet incontestable." *Id.*

On March 1, 2013, Radio Networks requested that Defendants return the overpayment. BEI did not deny that there was an overpayment, but it requested an audit for the Final Contract Period pursuant to paragraph 3(e) of the Agreement. The parties agreed that the audit was to occur at Radio Networks' offices on June 12 and 13, 2013. In advance of the audit, BEI asked Radio Networks to make certain documents available that it wanted to review in connection with the audit. Radio Networks provided all the documentation related to distribution of the Programs that BEI requested,

as well as the majority of the other documents requested. BEI conducted the audit at Radio Networks' offices in Dallas on June 12-13, 2013. Following the two-day audit, Defendants' auditor, Kaefer, prepared a report, stating, "While there are some deficiencies in the supporting documentation of revenue and payroll expenses, there were no material inconsistencies between the final talent statement and the general ledger that were observed." Kaefer Dep. Tr. 78:17-21 (Pls.' Summ. J. App. 395). While Defendants followed up with more questions and sought more supporting documentation two months later, this is insufficient to raise a genuine dispute of material fact that they were denied the permitted audit under the Agreement.

Thus, with regard to BEI and Baisden's Accounting Counterclaim, the court determines that they have failed to produce summary judgment evidence sufficient to create a genuine dispute of material fact that Plaintiffs breached the Agreement in this regard, and the court accordingly will grant Plaintiffs' motion for summary judgment on this counterclaim and enter judgment as a matter of law in their favor.

c.      *Satellite Radio Counterclaim (Count Three)*

In Count III of their Counterclaim, Defendants contend that Plaintiffs breached the Agreements by failing to "use reasonable commercial efforts to obtain distribution of the [Michael Baisden Programs] over satellite radio." Countercl. ¶ 37. Plaintiffs seek summary judgment on this counterclaim.

Under the Agreement, Plaintiffs were not required to actually secure satellite radio distribution rights, or required to exercise such rights if they were obtained. Further, Defendants rely on speculation and assert that had Plaintiffs been able to distribute the program over satellite radio,

such distribution would have resulted in additional compensation for Defendants. Defendants, however, produce no competent summary judgment evidence to support their assertion.

Finally, a bald promise to use best efforts to cause an event to occur, absent some kind of goal or guideline against which best efforts may be measured, has been held unenforceable by Texas courts. *See, e.g., Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 327 (5th Cir. 2011) (holding that "best efforts" clauses, including a clause requiring a party to use "best efforts to further promotion, marketing, licensing, and sale of Product," is unenforceable under Texas law); *York Grp., Inc. v. York S., Inc.*, 2006 WL 2883363, at *2-3 (S.D. Tex. Oct. 10, 2006) (holding that "best efforts" clauses in agreement were unenforceable). Here, the Agreement provides no objective guideline by which to measure "best efforts," and, accordingly, any such agreement in unenforceable as a matter of law.

Thus, with regard to BEI and Baisden's Satellite Radio Counterclaim, the court determines that they have failed to produce summary judgment evidence sufficient to create a genuine dispute of material fact that Plaintiffs breached the Agreement in this regard, and the court accordingly will grant Plaintiffs' motion for summary judgment on this counterclaim and enter judgment as a matter of law in their favor.

d.      *Good-Faith Negotiations Counterclaim (Count Four)*

Plaintiffs argue they are entitled to summary judgment on Defendants' Good-Faith Negotiations Counterclaim because they were under no obligation to negotiate with Defendants for an extension of the Agreement. The court agrees.

The express terms of the Agreement only required Defendants to engage in good-faith negotiations with Plaintiffs (at Plaintiffs' election) and did not require Plaintiffs to engage in negotiations with Defendants. Specifically, the Agreement provides:

> [BEI and Baisden] agree, if [Radio Networks] so elect[s], that commencing at least one hundred and eighty (180) days prior to the end of the Term of this Agreement and continuing until the end of the Term ("Negotiation Period"), [BEI] and [Baisden] will engage in good faith negotiations with [Radio Networks] for the extension of this Agreement . . . .

Agreement ¶ 2(b) (Pls.' Summ. J. App. 15).  The Agreement does not impose any obligations on Radio Networks or Cumulus to engage in extension negotiations with Defendants.

Even were the Agreement to impose a duty on Plaintiffs to negotiate with Defendants for an extension of the Agreement, Defendants have failed to provide any evidence of damages based on a failure to negotiate. *See Sport Supply Grp. v. Columbia Cas. Co.*, 335 F.3d 453, 465-66 (5th Cir. 2003) (affirming district court's grant of summary judgment on breach of contract claim where party failed to provide evidence of damages).

Thus, with regard to BEI and Baisden's Good-Faith Negotiations Counterclaim, the court determines that they have failed to produce summary judgment evidence sufficient to create a genuine dispute of material fact that Plaintiffs breached the Agreement in this regard, and the court accordingly will grant Plaintiffs' motion for summary judgment on this counterclaim and enter judgment as a matter of law in their favor.

### e. Tortious Interference Counterclaim (Count Five)

Plaintiffs move for summary judgment on BEI and Baisden's claim for tortious interference with prospective business relationships.  The elements of a claim for tortious interference with prospective business relationships are as follows:

(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

In support of their Motion for Partial Summary Judgment, Radio Networks and Cumulus argue that BEI and Baisden have failed to establish a prima facie case of tortious interference with prospective business relationships. Specifically, Plaintiffs argue that there is no evidence of interference, no evidence that Radio Networks and Cumulus knew the identity of a third-party offeror, or had any interaction with a third party. The court agrees.

There can be no interference when a defendant has not had any interaction with the prospective third party. *See Ash v. Hack Branch Distributing Co.*, 54 S.W.3d 401, 415 (Tex. App.—Waco 2001, pet. denied) (holding court properly granted summary judgment on plaintiff's tortious interference claim when there was "no evidence of dealings between [defendant] and [the third parties]"). The undisputed evidence shows that Radio Networks and Cumulus were never even informed of the identity of the third-party offeror. There is no evidence that Radio Networks and Cumulus ever communicated with a third-party offeror regarding the offer to Defendants. Thus, there is no evidence before the court that Radio Networks and Cumulus interfered with Defendants' prospective relationship with a third party.

In response to Plaintiffs' summary judgment motion on their tortious interference claim, Defendants assert that an e-mail from Plaintiffs' general counsel to Defendants, if published to a third party, would be actionable under the torts of defamation or business disparagement. Defs.'

Summ. J. Resp. Br. 23.  As Plaintiffs correctly note, however, both of these torts require a defendant to have published false information concerning the plaintiff to a third party, of which there is no evidence in this case.  Further, Defendants do not even contend that this message was sent to any third party.

In sum, with regard to BEI and Baisden's claim for tortious interference with prospective business relationships, the court determines that Defendants have failed to produce summary judgment evidence sufficient to create a genuine dispute of material fact that they lost prospective business as a result of an independently tortious act of Radio Networks and Cumulus.  Accordingly, because BEI and Baisden have failed to raise a genuine dispute of material fact that Radio Networks and Cumulus interfered with their prospective business relationships, the court will grant Radio Networks and Cumulus's motion for summary judgment on this counterclaim and enter judgment as a matter of law in their favor.  *See Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 629 (S.D. Tex. 2011) (granting summary judgment because no evidence that defendant's actions resulted in the alleged harm); *see also Celotex*, 477 U.S. at 323.

### f.    Counterclaim for Declaratory Judgment

Radio Networks and Cumulus also seek entry of summary judgment on BEI and Baisden's claim for a declaratory judgment that a noncompete covenant in the Agreement would have been unenforceable.  The court agrees.

Pursuant to "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to declare the rights and other legal relations of any interested party seeking such declaration." *Val–Com Acquisitions Trust v. Chase Home Fin., L.L.C.,* 434 F. App'x 395, 395 (5th Cir. 2011) (citations omitted). "[A] declaration may issue only to resolve an actual controversy between the parties. An

actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citations omitted). Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id.* at 395-96 (citations omitted). Further, the "plaintiff[ ] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id.* at 396 (citations omitted).

The noncompete provision in the Agreement expired on March 31, 2014, and thus it no longer restricts Defendants. Defendants' counterclaim was not filed until January 25, 2016. *See* Doc. 87. Accordingly, this claim fails to present a justiciable controversy and is moot. For this reason, Radio Networks and Cumulus are entitled to summary judgment on BEI and Baisden's declaratory judgment claim.

### B.       BEI and Baisden's Motion for Summary Judgment[10]

BEI and Baisden move for summary judgment on Radio Networks' claims, as well as on their own affirmative defenses of statute of limitations, statute of frauds, the parol evidence rule, excuse based on prior breach, and ratification and/or waiver. As previously stated, Radio Networks brings the following claims: (1) breach of contract (Count One); (2) restitution and money had and received (Count Two); and (3) fraudulent transfer under the Texas Business and Commerce Code § 24.005 (Count Three). The court now addresses BEI and Baisden's arguments in support of their motion for summary judgment as to each claim, as well as the affirmative defenses upon which they move for summary judgment.

---

[10] Although BEI and Baisden title their motion as a "Motion for Summary Judgment," Plaintiffs correctly note that it is actually a motion for *partial* summary judgment, as BEI and Baisden have not moved for summary judgment on any of their counterclaims and only on certain of their affirmative defenses.

### 1. *Radio Networks' Breach of Contract Claim (Count One)*

Defendants move for summary judgment on Radio Networks' breach of contract claim. To reiterate, Radio Networks contends that BEI and Baisden breached the Agreement by retaining, and refusing to repay, $1,000,000 in payments received in excess of the amounts Radio Networks was obligated to pay (and Defendants were entitled to receive). Radio Networks contends that under the Agreement, BEI is not entitled to retain this amount and has an affirmative duty to return these overpaid amounts to Radio Networks. Radio Networks further asserts that under the Guarantee, Baisden guaranteed each and every obligation of BEI, including the obligation to repay it for the $1,000,000 overpayment.

BEI and Baisden move for summary judgment, arguing that they are entitled to summary judgment because there is no express provision in the Agreement addressing the event of an accounting error leading to overpayment. The court rejects this argument, as it is without legal basis.

"When a contract is silent on an issue, Texas courts will infer reasonable terms. Texas courts will supply missing terms when necessary to effectuate the purposes of the parties under the agreement." *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 731-32 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (internal citations omitted); *accord Woodward v. Liberty Mut. Ins. Co.,* 2010 WL1186323, at *5 (N.D. Tex. Mar. 26, 2010).

The Agreement contains other provisions addressing the return of overpayments, although not precisely the specific scenario presented. For example, Paragraph 3(b) of the Agreement addresses returns of advances in the event the Agreement is terminated early. Paragraph 3(f) expressly addresses the potential for overpayments relating to the contractually defined "Website Fee," "Production Fee," and "Event Costs," all categories for which the specific payment amount

might vary, and requires Defendants to repay any overpayment of these costs. Agreement ¶ 3(f) (Pls.' Summ. J. App. 18). Further, as Plaintiffs correctly argue, Baisden himself confirmed the understanding that overpayments would be repaid at his deposition, testifying that when his accountant confirmed an overpayment of the Guaranteed Amount previously, he trusted the accountant and refunded the overpayment to Radio Networks. Baisden Dep. Tr. 111:1-17 (Pls.' Resp. App. 605).

Under these circumstances, the court **concludes** that it was the intent of the parties that overpayments be returned. At a minimum, as Plaintiffs argue, they have raised a genuine dispute of material fact on this point, rendering summary judgment in Defendants' favor inappropriate. Accordingly, the court **denies** Defendants' motion for summary judgment on Plaintiffs' breach of contract claim.[11]

### 2. *Radio Networks' Claim for Money Had and Received (Count Two)*

BEI and Baisden move for summary judgment on Radio Network's claim for money had and received. The court has already set forth the applicable Texas law concerning a claim for money had and received, which it incorporates into this section by reference. *See supra* Sec. III.A.1. The court has also set forth the summary judgment evidence related to this claim, and denied Radio Network's and Cumulus's motion for partial summary judgment on this claim, finding that Defendants had raised a genuine dispute of material fact precluding the relief sought. Similarly, the court concludes

---

[11] The court also rejects Defendants' argument that they should not have to pay back any overpayment because the wire transfers came from Cumulus's bank account, and not Radio Networks. Plaintiffs have provided undisputed evidence that Cumulus, as Radio Networks' parent company, operates a centralized cash management system for Radio Networks and other subsidiaries, and processes the disbursements for Radio Networks and its other subsidiaries through its bank account for convenience, but each of the payments is accounted for and charged to the specific subsidiary. *See* Malone Decl. ¶¶ 3-4 (Pls.' Summ J. App. 577). In light of this evidence, the court rejects Defendants' argument that Radio Networks did not suffer any damages since the wire transfers came from Cumulus's bank account. Further, the court **overrules** Defendants' objections to Malone's Declaration for the reasons previously stated. *See supra* note 5.

that, based on the same evidence, Cumulus and Radio Networks have raised a genuine dispute of material fact that they overpaid Defendants $1,000,000 during the Final Contract Period. Further, Defendants have failed to carry their burden on a summary judgment motion to show that it is a matter of undisputed fact that there has been no overpayment. Accordingly, the court **denies** Defendants' motion for summary judgment on Plaintiffs' claim for money had and received.

### 3. *Radio Networks' Fraudulent Transfer Claim (Count Three)*

Defendants move for summary judgment on Radio Networks' claim of fraudulent transfer. To reiterate, Plaintiffs contend that BEI fraudulently transferred assets to Baisden that constituted both "actual" and "constructive" fraud under TUFTA, Tex. Bus. & Com. Code §§ 24.005(a)(1); 24.005(a)(2), 24.006(a).[12]

The applicable state law is TUFTA, Tex. Bus. & Com. Code § 24.001 *et seq.* "The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach." *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 767 (S.D. Tex. 2013) (internal quotations and citations omitted). TUFTA first requires that a "transfer [is] made or [an] obligation [is] incurred by a debtor." Tex. Bus. & Com. Code § 24.005(a). TUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." *Id.* § 24.002(12). Thus, for a transfer to occur, it must include an "asset." TUFTA defines "asset" as all property of the debtor but expressly excludes "property to the

---

[12] Radio Networks' fraudulent transfer claim is pleaded in the alternative, as Defendants have argued that Baisden cannot be held liable for any overpayment if BEI is found liable, since he was not a signatory to the Agreement. If a jury finds that BEI is liable for breach of contract, however, Baisden would be liable under the Guarantee he signed agreeing to "be personally bound by all . . . provisions [of the Agreement] . . . and [to] personally guarantee[] the obligations of [BEI]" under the Agreement. Baisden Guarantee (Pls.' Summ. J. App. 28) (Doc. 130).

extent it is encumbered by a valid lien." *Id.* § 24.002(2)(A). "A lien includes a security interest." *Id.* § 24.002(8).

TUFTA recognizes two categories of voidable fraudulent transfers: actual fraudulent transfers, Tex. Bus. & Com. Code § 24.005(a)(1); and constructive fraudulent transfers, *id.* §§ 24.005(a)(2), 24.006(a). Actual fraud occurs when "the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 24.005(a)(1). TUFTA provides a nonexclusive list of eleven "badges of fraud" that indicate whether a debtor actually intended to defraud a creditor under TUFTA. *See U.S. Bank, N.A., v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 435 (5th Cir. 2014). A transfer is not voidable if the recipient took it in good faith and for value. Tex. Bus. & Com. Code § 24.009.

Constructive fraud occurs when a transfer was made without the debtor receiving a reasonably equivalent value in exchange and the debtor either:

(A) was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or

(B) intended to incur, or believed or unreasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pat as they became due.

*Id.* § 24.005(a)(2). "For purposes of [constructive fraud], a person gives a reasonably equivalent value if the person acquired an interest of the debtor in an asset pursuant to a regularly conducted, *noncollusive* foreclosure sale." *Id.* § 24.004(b) (emphasis added).

"In general, a determination of liability under TUFTA is a two-step process: first, a finding that a debtor made an actual fraudulent transfer or a constructive fraudulent transfer; and second, recovery for that fraudulent transfer, or its value, from the transferees." *Spring Street Partners v. LAM*, 730 F.3d 427, 436 (5th Cir. 2013) (internal citations omitted).

Viewing the evidence in the light most favorable to the nonmoving party, the record demonstrates that following the conclusion of the audit and Radio Networks' demands to return the overpayment, BEI made the following transfers to Baisden: $500,000 on July 12, 2013; $100,000 on July 15, 2013; and $20,000 on August 8, 2013. Defs.' Resp. to Second Interrogs. No. 3 (Pls.' Resp. App. 613-614) (Doc. 136-1). After Radio Networks filed this lawsuit, BEI made additional transfers to Baisden, as follows: $20,000 on December 1, 2015; $20,000 on December 17, 2015; and $40,000 on February 5, 2016. *Id.* The evidence presented is sufficient to raise a genuine dispute of material fact as to multiple badges of fraud. Among other things, it is undisputed that the transfers were made "to an insider," as Baisden was the sole owner and officer of BEI. *See* Tex. Bus. & Com. Code § 24.002(7) (defining "insider"). Second, evidence shows that some of the transfers were concealed. *See* Pls.' Resp. App. 636-68. Third, each of the transfers was made after Plaintiffs had threatened Defendants with a lawsuit arising out of the overpayment. *See In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 473-74 (N.D. Tex. Bankr. 2009) (defendant's receipt of demand letter sufficient to trigger badge of fraud). Fourth, bank records show that the transfers were of nearly all BEI's assets. *See* Pls.' Resp. App. 673-93.

For these reasons, the court **determines** that Plaintiffs have raised a genuine dispute of material fact regarding the existence of numerous badges of fraud from which a reasonable jury could conclude that BEI made the transfers to Baisden with intent to hinder, delay, or defraud Plaintiffs, in violation of TUFTA. The court further **concludes** that Plaintiffs have raised a genuine dispute of material fact that the transfers to Baisden were constructively fraudulent, in violation of TUFTA. Accordingly, the court **denies** Defendants' motion for summary judgment on Plaintiffs' fraudulent transfer claim.

4. *Affirmative Defenses*

Defendants move for summary judgment on the following affirmative defenses: statute of limitations; statute of frauds; the parol evidence rule; excuse due to prior breach; and ratification or waiver. As previously stated, because a defendant "bears the burden of proving an affirmative defense at trial," in moving for summary judgment such defendant must "establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194. For the reasons that follow, the court determines that Defendants have failed to meet their burden of establishing all elements of their various affirmative defenses to warrant entry of summary judgment in their favor.

a. *Statute of Limitations*

As a preliminary matter, BEI and Baisden argue that Texas's two-year statute of limitations bars Radio Networks' claim for money had and received. Specifically, they contend that Radio Networks' claim for money had and received is barred by a two-year statute of limitations because the claim purportedly accrued in January 2012—when the first monthly payment for the Final Contract Period was made to Defendants. *See* Defs.' Summ. J. Br. 27–28. Thus, according to BEI and Baisden, Radio Networks' claim is barred because it was brought more than two years later.

In response, Plaintiffs argue that Radio Networks' claim did not accrue until December 2012, that is, when Defendants were first paid more than they were owed under the Guaranteed Amount set forth in the Agreement (that is, more than $7,250,000). Radio Networks filed this lawsuit in May 2014, which was well within the statute of limitations. The court agrees.

Under Texas law, a claim for money had and received does not accrue when funds are received by the defendant, but when the defendant improperly retains money to which he is not

entitled.  *See H.E.B., L.L.C v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App. —Fort Worth 2012, no pet.).  Here, Radio Networks did not suffer any injury and could not have brought a claim to recover money, until at least December 2012, as that was when Defendants had first been paid more than $7,250,000, which was the Guaranteed Amount under the Agreement.

For these reasons, Radio Networks' claim is not time-barred by Texas's two-year statute of limitations on money had and received claims.  Accordingly, the court **denies** Defendants' motion for summary judgment on its statute of limitations affirmative defense.

### b.      Statute of Frauds and Parol Evidence Rule

The court similarly **denies** Defendants' motion for summary judgment on their affirmative defenses of statute of frauds and the parol evidence rule.  Radio Networks' claims do not rely on an alleged oral agreement but rather on the Agreement and its amendments, which are in writing and signed by the parties.[13]  Further, as already stated, the money had and received claim does not rely on the existence of an enforceable contract, and the statute of frauds is, therefore, not a defense to such a claim.  Similarly, with respect to the parol evidence rule, Defendants have failed to show that any evidence upon which Plaintiffs rely seeks to vary or contradict the terms of the Agreement, which are complete and unambiguous.[14]  Accordingly, the court **denies** Defendants' motion for summary judgment on its statute of frauds and parol evidence affirmative defenses.

---

[13] Under Texas law, when a promise or agreement, either by its terms or by the nature of the required performance, cannot be completed within one year from the date of its making, it falls within the statute of frauds; and therefore, to be enforceable, the promise or agreement must be in writing and signed by the party sought to be charged. Tex. Bus. & Com. Code Ann. § 26.01(a); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.,* 55 F.3d 181, 184 (5th Cir.1995).

[14] "Under Texas law, parol evidence is admissible to clarify, explain, or give meaning to a writing that is facially incomplete, but only insofar as the evidence does not vary or contradict those terms of the writing that are complete and unambiguous." *Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 175 (5th Cir. 1990) (citations omitted).

### c. Excuse Based on Prior Breach

The court **denies** Defendants' motion for summary judgment on their affirmative defense that Radio Networks' claims are barred by a prior breach of the Agreement. Defendants have failed to meet their burden of showing beyond peradventure that Plaintiffs engaged in any material breach of the Agreement. Defendants have failed to provide evidence that they were not allowed to conduct the audit of the distribution of the Program. In fact, the evidence shows that the contractually permitted audit took place on June 12 and 13, 2013.

### d. Ratification or Waiver

Finally, the court denies Defendants' motion for summary judgment on their affirmative defense of waiver or ratification. Defendants fail to meet their burden of showing the elements of this affirmative defense beyond peradventure. There is insufficient evidence that Plaintiffs intentionally overpaid Defendants or waived any right to recover an overpayment.

## IV. Conclusion

For the reasons herein stated, the court **denies** Defendants/Counter-Plaintiffs Baisden Enterprises, Inc. and Michael Baisden's Motion for Summary Judgment (Doc. 121) in its entirety. As to Plaintiff/Counter-Defendant Radio Networks, LLC and Counter-Plaintiff Cumulus Media, Inc.'s Motion for Partial Summary Judgment (Doc. 168), the court:

(1)      **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's Obligation to Match Counterclaim (Count One), and **dismisses** this claim **with prejudice**;

(2)      **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's Accounting Counterclaim (Count Two), and **dismisses** this claim **with prejudice**;

(3) **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's Satellite Radio Counterclaim (Count Three), and **dismisses** this claim **with prejudice**;

(4) **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's Good-Faith Negotiations Counterclaim (Count Four), and **dismisses** this claim **with prejudice**;

(5) **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's tortious interference with prospective business relations counterclaim (Count Five), and **dismisses** this claim **with prejudice**;

(6) **grants** summary judgment in Radio Networks' and Cumulus's favor on BEI and Baisden's request for declaratory judgment, and **dismisses** this claim **without prejudice** as nonjusticiable; and

(7) **denies** Radio Networks' and Cumulus's Motion for Summary Judgment on their claim for money had and received (Count Two).

Further, the court **denies as moot** Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of C.D. Shamburger, Jr. (Doc. 125), filed November 18, 2016; **denies as moot** Radio Networks, LLC and Cumulus Media, Inc.'s Motion to Exclude Testimony of Spencer Brown, Esq. Relating to Audits (Doc. 128), filed November 18, 2016; and **overrules as moot** all remaining evidentiary objections made by BEI and Baisden upon which the court has not already ruled in this Order, as it has not had need to consider any of this evidence in reaching its decision. *See* Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 138); Defs.' Obj. to Pls./CounterDefs.' Evidence (Doc. 154).

Remaining for trial are: Radio Networks' claims for breach of contract (Count One); alternative claim for money had and received (Count Two); and fraudulent conveyance claim (Count Three). As the court has narrowed considerably the issues to be tried, this trial should not last as long as originally announced by the parties. Moreover, the court **orders** the parties to discuss the

prospect of settlement and inform the court in writing of the status of such negotiations by **Friday, June 16, 2017, at 12:00 p.m.**

      **It is so ordered** this 13th day of June, 2017.

Sam A. Lindsay
United States District Judge