# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RADIO NETWORKS, LLC, § | |
| § | |
| Plaintiff/Counter-Defendant, § | |
| § | |
| v. § | |
| § | Civil Action No: 3:14-CV-1860-L |
| BAISDEN ENTERPRISES, INC., § | |
| and MICHAEL BAISDEN, § | |
| § | |
| Defendants/Counter-Plaintiffs, § | |
| § | |
| v. § | |
| § | |
| CUMULUS MEDIA, INC., § | |
| § | |
| Counter-Defendant.[1] § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: Plaintiff Radio Networks, LLC's Motion to Enter Judgment as a Matter of Law as to Damages Consistent with the Evidence Adduced at Trial (Doc. 289); and Plaintiff Radio Network, LLC's Motion Regarding Recovery of Punitive Damages (Doc. 292). Having considered the motions, responses, replies, record, evidence adduced at trial, jury verdict rendered on July 19, 2017, and applicable law, the court **denies in part** and **grants in part** Plaintiff Radio Networks, LLC's Motion to Enter Judgment as a Matter of Law as to Damages Consistent with the Evidence Adduced at Trial (Doc. 289), and **grants** to the extent herein set forth Plaintiff Radio Network, LLC's Motion Regarding Recovery of Punitive Damages (Doc. 292).

---

[1] On January 13, 2016, the court granted Defendants leave to join Cumulus Media, Inc. as a party to this action. *See* Order (Doc. 84).

**Memorandum Opinion and Order – Page 1**

## I. Background

### A. The Lawsuit and the Parties' Contentions

This civil action was brought by Plaintiff Radio Networks, LLC ("Radio Networks" or "Plaintiff") against Defendants Michael Baisden ("Baisden") and Baisden Enterprises, Inc. ("BEI") (collectively, "Defendants") on May 21, 2014. The lawsuit arose from a contractual dispute between the parties as to whether Radio Networks overpaid BEI and Baisden by approximately $1,000,000 under an agreement entered into by Radio Networks and BEI on November 12, 2008, for the production and delivery of radio programs featuring Baisden (the "Agreement"). The Agreement was amended by the parties three times. Radio Networks contended that, because of an accounting error, it overpaid Defendants under the terms of the Agreement by approximately $1,000,000, and that Defendants were required by law to return the overpayment. Radio Networks brought claims for money had and received, breach of contract, and fraudulent transfers from BEI to Baisden under the Texas Uniform Fraudulent Transfer Act ("TUFTA").

Defendants contended that Radio Networks could not establish that it overpaid Defendants under the Agreement. Defendant BEI further contended and counterclaimed that Radio Networks and its parent company, Cumulus Media, Inc. ("Cumulus"), which was joined as a third-party Defendant, breached the Agreement by obstructing its ability to conduct an audit permitted under the Agreement and by failing to use efforts consistent with normal commercial practices to market and distribute the Michael Baisden show. According to Defendants, a proper audit would have revealed they were not overpaid, and may have been underpaid. Further, BEI contended that, had Radio Networks and Cumulus used efforts consistent with normal commercial practices to market and distribute the Michael Baisden show, Defendants would have reached or exceeded the

threshold amount in the Agreement which would have entitled them to the $1,000,000. Radio Networks and Cumulus asserted several defenses to BEI's breach of contract counterclaims. Defendants asserted several defenses to Radio Networks' three claims.

      **B.     The Trial and Jury Verdict**

This civil action was tried over a period of twelve days from June 22, 2017, to July 19, 2017. The jury rendered its verdict on July 19, 2017. *See* Court's Charge to the Jury ("Jury Charge") (Doc. 281).

As to Plaintiff's breach of contract claim, the jury found (in response to Question Nos. 1 through 4 of the Jury Charge) that Defendants breached the Agreement by failing to return an overpayment of "approximately one million dollars." *See* Doc. 281 at 11-12. The jury also found (in response to Question No. 5 of the Jury Charge) that Baisden was personally liable for BEI's obligations under the Agreement pursuant to a guaranty. *Id.* at 13. Finally, the jury found (in response to Question No. 10 of the Jury Charge) that $800,000 would fairly and reasonably compensate Plaintiff for its damages resulting from Defendants' breach of the Agreement. *Id.* at 21.

With respect to Plaintiff's claim for restitution and money had and received, which Plaintiff pled in the alternative to its breach of contract claim, the jury found in response to Question No. 6 of the Jury Charge that BEI or Baisden received money from Plaintiff that in equity and good conscience belonged to Plaintiff. *Id.* at 14. The jury also found (in response to Question No. 11 of the Jury Charge) that the amount Defendants received that in equity and good conscience

belonged to Plaintiff was $1,000,000. *Id.* at 22.[2] The jury's findings with regard to Plaintiff's claim for restitution and money had and received are not the subject of the pending motion.

As to Plaintiff's fraudulent transfer claim, the jury found (in response to Question Nos. 7 through 9 of the Jury Charge) that BEI fraudulently transferred money to Baisden, at Baisden's direction, and that these transfers were made when BEI was insolvent. *Id.* at 15-17. The undisputed evidence produced at trial, including Defendants' bank records and interrogatory answers, showed that the transfers made after March 1, 2013—when Plaintiff first demanded that Defendants return the $1,000,000—totaled $700,000. *See* Ex. 1 to App. in Supp. of Pl.'s Brief in Supp. of Mot. for J.M.O.L. (Doc. 291) (Pl.'s Ex. 50, Resp. to Interr. No. 3). At trial, Defendants disputed liability, arguing that the transfers were made in good faith, but they never denied or challenged the amount of the transfers. Defendants did not object to the admission of Plaintiff's Exhibit 50, insofar as it lists the amount of each transfer after March 1, 2013, which transfers total $700,000. Moreover, Defendants did not produce any evidence to dispute the amount of the transfers, which the jury found to be fraudulent. Notwithstanding these findings, the jury found (in response to Question No. 12 of the Jury Charge) that the amount of money or property transfers found to be fraudulent was "$0.00." *Id.* at 23.

As to exemplary damages to be awarded in connection with the fraudulent transfer claim, the jury found (in response to Question No. 14 of the Jury Charge) that Plaintiff had established, by clear and convincing evidence, that it suffered harm resulting from Defendants' malice or fraud and awarded Plaintiff $1,000,000 in exemplary damages jointly against Defendants. *Id.* at 24-25.[3]

---

[2] In response to Question No. 11, the jury found that BEI received $1,000,000 and that Baisden received $1,000,000. After the verdict was returned, the court polled the jury, which clarified that its finding was $1,000,000 total, and not $2,000,000.

[3] In response to Question No. 14, the jury awarded $1,000,000 against Baisden for exemplary damages and $1,000,000 against BEI for exemplary damages. After the verdict was returned, the court

Following the jury's verdict, Defendants requested that the court vacate the jury's award of exemplary damages because, in response to Question No. 12 of the Jury Charge, with respect to the amount of fraudulent transfers, the jury answered "$0.00." Under Texas law, exemplary damages may only be awarded if actual damages are awarded relating to a claim for which exemplary damages are recoverable. Tex. Civ. Prac. & Rem. Code §41.004(a); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 417 (5th Cir. 2009). In light of the jury's response to Question No. 12, and Defendants' request that the court vacate the jury's award of exemplary damages, the court directed the parties to submit legal briefs addressing the issue of exemplary damages raised by the jury's answer to Question No. 12 of the Jury Charge. *See* Order (Doc. 285).

On July 26, 2017, Plaintiff filed its Motion to Enter Judgment as a Matter of Law as to Damages Consistent with the Evidence Adduced at Trial (Doc. 289) and brief in support (Doc. 290), asking the court to: (1) increase the jury's damages award on its breach of contract claims from $800,000 to $999,999.95; and (2) increase the jury's damages award on its fraudulent transfer claim from $0 to $700,000. Radio Networks also filed a Motion Regarding Recovery of Punitive Damages (Doc. 292), asking the court to enforce the jury's award of exemplary damages in the amount of $1,000,000 by granting its Motion to Enter Judgment as a Matter of Law as to Damages Consistent with the Evidence Adduced at Trial.

Defendants oppose the relief sought. *See* Defs.' Resp. to Pl.'s Mot. Regarding Recovery of Punitive Damages (Doc. 293); Defs.' Resp. to Pl.'s Mot. to Enter J.M.O.L (Doc. 298). Among other things, Defendants argue that: "Believing it senses blood in the water, Plaintiff asks the Court to take the unprecedented step of virtually doubling the amount of the jury award in this case."

---

polled the jury, which clarified that its finding was an award of $1,000,000 total in exemplary damages, and not $2,000,000.

**Memorandum Opinion and Order – Page 5**

Defs.' Resp. to Pl.'s Mot. to Enter J.M.O.L. 1. Defendants further oppose the relief sought on the basis that, pursuant to *Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935), and the Seventh Amendment to the U.S. Constitution, additur is generally not permitted following a federal court jury trial. *Id.* at 2-3.

## II. Legal Standard

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a court may modify a jury's verdict under Rule 59(e) "to correct manifest errors of law or fact." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989); *Roman v. W. Mfg., Inc.*, 2010 WL 5092977, at *2 (W.D. La. Nov. 29, 2010), *aff'd*, 691 F.3d 686, 702 (5th Cir. 2012). In this regard, the Fifth Circuit has held that when a jury has "properly determined liability and there is no valid dispute as to the amount of damages," a court may increase the amount of damages award above the jury verdict. *Roman*, 691 F.3d at 702 (quoting *Moreau v. Oppenheim*, 663 F.2d 1300, 1311 (5th Cir.1981)). As noted by the Fifth Circuit, "This principle is firmly recognized across the circuits." *Id.* (collecting cases). Doing so does not violate the constitutional rule against additur because the court "is in effect simply granting summary judgment on the question of damages." *Roman*, 2010 WL 5092977, at *3 (quoting *Moreau*, 663 F.2d at 1311); *see also Roman*, 691 F.3d at 702 (quoting 12 *Moore's Federal Practice* § 59.13[2] at 59-80) ("These instances of uncontested damages 'do not technically involve additur, because the correct figure is divined as a matter of law, and the plaintiff is not made to choose between the increased damage award and a new trial.'")).

## III. Analysis

The court has reviewed the parties' briefing, evidence adduced at trial, court's charge to the jury, and jury verdict. Based on this review, and under applicable law as set forth above (*see supra* Sec. II), the court concludes that: (1) the jury properly determined liability on Plaintiff's

breach of contract and fraudulent transfer claims; (2) the evidence pertaining to the amount of damages on Plaintiff's breach of contract claim was disputed at trial, and no modification of the jury's award is warranted or permissible; and (3) the evidence pertaining to the amount of damages on Plaintiff's fraudulent transfer claim was undisputed and modification of the jury's award is required to avoid a manifest injustice.

### A. Breach of Contract (Count One)

Plaintiff asks the court to increase the jury's award of $800,000 in compensatory damages on its breach of contract claim (in response to Question No. 10 of the Jury Charge) to $999,999.95. In support, Plaintiff argues that the increase is required because the amount of $800,000 is "inconsistent with the evidence presented at trial." Pl.'s Brief in Supp. of Mot. for J.M.O.L. 1 (Doc. 290). According to Plaintiff, "the jury found that Defendants breached their Agreement with [Plaintiff] by failing to return an overpayment of approximately $1 million, but inexplicably entered damages of only $800,000.00." *Id*. at 2. Plaintiff argues that the court should, therefore, modify the jury's award, "increasing the amount of Radio Network's damages on its breach of contract claim to $999,999.95." *Id.* In response, Defendants contend that the amount of damages for the breach of contract claim was disputed. Defendants point out that during the trial, BEI presented the jury with numerous mathematical errors in Plaintiff's Exhibit 11, the document Plaintiff used to quantify damages for its breach of contract claim. Defs.' Resp. to Pl.'s Mot. to Enter J.M.O.L. 8. As another example, Defendants argue that the jury could have determined that one or more of the fifteen monthly payments for the Final Contract Period did "not . . . . constitute[] proper damages." *Id.*

In addition to the instances cited by Defendants, the court has reviewed the unofficial transcript of the July 12, 2017 jury charge conference and determines that counsel for Plaintiff,

breach of contract and fraudulent transfer claims; (2) the evidence pertaining to the amount of damages on Plaintiff's breach of contract claim was disputed at trial, and no modification of the jury's award is warranted or permissible; and (3) the evidence pertaining to the amount of damages on Plaintiff's fraudulent transfer claim was undisputed and modification of the jury's award is required to avoid a manifest injustice.

### A. Breach of Contract (Count One)

Plaintiff asks the court to increase the jury's award of $800,000 in compensatory damages on its breach of contract claim (in response to Question No. 10 of the Jury Charge) to $999,999.95. In support, Plaintiff argues that the increase is required because the amount of $800,000 is "inconsistent with the evidence presented at trial." Pl.'s Brief in Supp. of Mot. for J.M.O.L. 1 (Doc. 290). According to Plaintiff, "the jury found that Defendants breached their Agreement with [Plaintiff] by failing to return an overpayment of approximately $1 million, but inexplicably entered damages of only $800,000.00." *Id*. at 2. Plaintiff argues that the court should, therefore, modify the jury's award, "increasing the amount of Radio Network's damages on its breach of contract claim to $999,999.95." *Id.* In response, Defendants contend that the amount of damages for the breach of contract claim was disputed. Defendants point out that during the trial, BEI presented the jury with numerous mathematical errors in Plaintiff's Exhibit 11, the document Plaintiff used to quantify damages for its breach of contract claim. Defs.' Resp. to Pl.'s Mot. to Enter J.M.O.L. 8. As another example, Defendants argue that the jury could have determined that one or more of the fifteen monthly payments for the Final Contract Period did "not . . . . constitute[] proper damages." *Id.*

In addition to the instances cited by Defendants, the court has reviewed the unofficial transcript of the July 12, 2017 jury charge conference and determines that counsel for Plaintiff,

David M. Pernini, Esq., acknowledged to the court that the jury could conceivably award damages in an amount much lower than $1,000,000 based on the allegations and evidence. With regard to Question No. 1, counsel for Defendants argued to the undersigned that Jury Question No. 1 should require Plaintiff to prove that the overpayment was exactly $1,000,000. Mr. Pernini objected to this proposed instruction and argued that Question No. 1 should not specify an actual amount but should ask more generally whether there had been an overpayment. In support of his position, Mr. Pernini stated:

> That is why I say put overpaid here. There is a question about damages, that would be something that the jury would have to determine. I am not trying to run from one million dollars. I am trying to avoid a situation. Oh, it is not one million dollars and, therefore, I am going to say there was no overpayment. My suggestion is, your Honor, did they overpay them under the contract. If they did, fine.
>
> The other thing honestly they have alleged that there is a different amount of damages that may have been earned, so it certainly is conceivable that the jury could say, well, I think they went over the threshold by $500,000. So yeah, if they overpaid him, but not by a million dollars, but by $500,000. In that case, I would still have a claim for overpayment. I think if we take out the one million, did they overpay, and the damages section which has to be shown is where we handle how much it is.

Tr. of July 12, 2017 Jury Charge Conference.

In light of Mr. Pernini's acknowledgement that the amount of damages the jury could potentially award on its breach of contract claim could vary considerably, and be as low as $500,000, the court concludes that Plaintiff has waived the ability to now assert that the amount of damages should be increased to $1,000,000. Accordingly, based on the arguments presented by Defendants in their opposition brief, Mr. Pernini's statements at the jury charge conference, and the disputed evidence regarding the mathematical calculations, the court concludes that the amount of damages for Plaintiff's breach of contract claim was clearly disputed. Accordingly,

increasing the amount of the jury's damages award from $800,000 to $999,999.95 is not warranted, and such increase would amount to an impermissible additur.

### B. Fraudulent Transfer (Count Three)

As previously stated, the jury specifically found that BEI fraudulently transferred money to Baisden, at Baisden's direction, and that these transfers were made when BEI was insolvent. *See* Jury Charge, Question Nos. 7-9 (Doc. 281 at 18-19). The undisputed evidence produced at trial, including Defendants' bank records and interrogatory responses, showed the amount of those transfers—for the time period after Plaintiff first demanded a return of the overpayment—to be $700,000. *See* Ex. 1 to App. in Supp. of Pl.'s Brief in Supp. of Mot. for J.M.O.L. (Doc. 291) (Pl.'s Ex. 50, Resp. to Interr. No. 3). With respect to the $700,000 in transfers made from BEI to Baisden after March 1, 2013, as shown in Plaintiff's Exhibit 50, Defendants did not object to the admissibility of this evidence. Further, there was no evidence to dispute the amount of the transfers, which the jury found to be fraudulent.

Accordingly, the court determines that the *undisputed* evidence at trial showed the amount of damages on Plaintiff's fraudulent transfer claim was $700,000. Further, there is no evidence in the record that supports the amount the jury awarded to Plaintiff on this claim, namely, $0.00. Under these narrow circumstances, the court concludes that modification of the jury's award is necessary to prevent a miscarriage of justice. *Roman*, 691 F.3d at 702 (holding that when a jury has "properly determined liability and there is no valid dispute as to the amount of damages," a court may increase the amount of damages award above the jury verdict) (citation omitted).

### IV. Election of Remedies

At this juncture, the court is unable to determine the precise amount of total damages or relief to which Plaintiff is entitled because it has not made an election of remedies. "The sole

purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong." *Malvino v. Delluniversita, PCA*, 840 F.3d 223, 234 (5th Cir. 2016) (citation omitted); *see also U.S. Bank Nat'l Ass'n v. Safeguard Insur. Co.*, 422 F. Supp. 2d 698, 711 (N.D. Tex. 2006) (Fitzwater, J.) ("The doctrine of election of remedies will generally bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust.") (internal quotation marks and citation omitted). Pursuant to the jury's verdict, as modified herein, Plaintiff is owed $800,000 on its claim for breach of contract and $ 1,700,000 on its fraudulent transfer claim (which includes an award of $1,000,000 in exemplary damages). Plaintiff may seek to recover under only one of these remedies. As an examination of the live pleading makes clear, Plaintiff's fraudulent transfer claim alleged that BEI had transferred funds to Baisden, rendering BEI insolvent, to avoid having to return the overpayment. *See* Am. Compl. ¶¶ 43-50 (Doc. 86). Plaintiff's fraudulent transfer claim sought to avoid the transfers such that any judgment could be satisfied. Otherwise stated, Plaintiff is not entitled to a double recovery on the same injury, namely, the failure to return an overpayment. Now that Plaintiff's choices are known, the court will order it to make an election.

## V. Conclusion

Based on the foregoing, the court **denies in part** and **grants in part** Plaintiff Radio Networks, LLC's Motion to Enter Judgment as a Matter of Law as to Damages Consistent with the Evidence Adduced at Trial (Doc. 289). The court **denies** Plaintiff's motion insofar as it requests that the court increase the jury's damages award on its breach of contract claim from **$800,000** to $999,999.95. The court g**rants** Plaintiff's motion insofar as it requests that the court increase the jury's damages award on its fraudulent transfer claim from $0.00 to **$700,000** and

hereby **modifies** the jury award to reflect an increase from "$0.00" to **"$700,000"** in response to Question No. 12 of the Jury Charge.

Based on this ruling, the jury's verdict awarding exemplary damages for Plaintiff's fraudulent transfer claim in the amount of **$1,000,000** will be upheld. Accordingly, Plaintiff Radio Network, LLC's Motion Regarding Recovery of Punitive Damages (Doc. 292) is **granted** to the extent herein set forth. All other findings and awards are unaffected by this memorandum opinion and order. Plaintiff is directed to inform the court in writing by **Friday, November 17, 2017,** of its election of remedies in light of the jury's verdict, as herein modified.

Following receipt and review of Plaintiff's election of remedies, a judgment will issue separately as required by Federal Rule of Civil Procedure 58.

**So ordered** this 7th day of November 2017.

                                        Sam A. Lindsay
                                        United States District Judge